Cases 21-1579 and 21-2649 A B Cernelle v. Graminex LLC et al. Argument not to exceed 15 minutes per side. Mr. Levin, you may proceed for the appellate. May it please the court, my name is Frederick Levin. I represent appellates Graminex LLC and Ms. Cynthia May. For simplicity, I will refer to Graminex and Ms. May together as Graminex. The crux of our appeal is that the district court abused its discretion by punishing as a contempt conduct that its original 2006 injunction did not definitely and specifically enjoin. That was a clear abuse of discretion which should be reversed. The entire monetary penalty imposed for contempt in this case is based on the district court's finding that Graminex violated the first paragraph of the original injunction. That paragraph used bold and capitalized letters to identify the conduct it specifically restrained and enjoined. The United States trademarks identified specifically by their U.S. trademark registration number. The first paragraph concludes with an intent recital closing off the means by which Graminex might pledge or alienate those marks, deeds or plans or contracts that might divest Cernelle of its ownership. Importantly, the district court held that Graminex did not pledge or alienate the Cernelle trademarks. That should have ended the issue of contempt. How do you account for the second sentence in that paragraph that says that the injunction's intent is to prevent the negotiation and execution of contracts, agreements, licenses and plans that employ or relate in any manner to the registered trademarks? That recital of intent is not a definite and specific command. It did not use the words of command. Is your position that each and every sentence in an order must include the capital orders and define that sentence? This seems like a punctuation rule to me. No, but I think it goes more than just to form. It goes to substance. Because the language in the intent recital refers back to the conduct that was specifically enjoined, pledging and alienating, which the court found my client did not do. And so, of course, when you're talking about the means of doing many things, entering into contracts and deeds and plans, are related to a subject matter. And the point here is the conduct that the court held us in contempt for is very different conduct. It involved the use of the marks as opposed to ownership of the marks. Didn't that configuration of the injunction grow from the combination of two paragraphs in the preliminary injunction? And that's exactly right. And the issue in the preliminary injunction was the contention that Graminex in some manner attempted to register the marks or assign the marks to itself. It had to do with the ownership question, not the use question. And so it's exactly that history that tells you that the intent recital modifies the first sentence and the capitalized and bolded order of command. And we know that both from a structure and a substance point of view, that's the correct way to read it. Because when the judge wanted, when Judge Lawson entered his contempt order and he wanted to enjoin the conduct that he found us in contempt for, he entered a new injunction. And he did it in exactly the way the original one was. He used the same words of command, but now he specified the use conduct, the selling overseas conduct that he wanted to enjoin. So when you look at the history, the very fact that he felt a need to enter the injunction, a new injunction, and in the exact same form, in the exact same structure, tells you that the original injunction did not cover this conduct. So it's not just language, it's not just punctuation, it's not just grammar. It's looking at how you interpret both the history and the structure of the document itself. But you would say that the way the initial, let's call it long form, because there was a much larger explanation in some of the earlier documents, your position is that the intent of those earlier documents was only about alienating? In that first paragraph. Pledging or alienating? Pledging and alien pledging is offering it as security or attempting to assign it or to sell it to others. And not about the other behavior that was proscribed in this earlier document about executing contracts or agreements or licenses such as foreign sales, such as the attempt to go back and obtain the trademarks themselves? Foreign sales were not in the original earlier document. That's the point. It was the issues there were the use of the website and the pledging and alienation allegations. And issues related to associating Cernel product, Cernel product associated, being associated with Graminex. But isn't that, I'm struggling with that because it's a very long form that really addresses a number of what your opposing counsel would say was inappropriate behavior on behalf of Graminex. And that includes both use, it includes access to markets, it includes holding oneself out as owning these trademarks. I'm just struggling with your argument that the context in which this arose isn't about all of those items that were addressed in the early rulings of the court. That was not at all at issue here. What that is is an allegation of a forward trademark infringement kind of allegation which was not covered in the original thing and not covered in the specific paragraph that the court found us in contempt for. It may be, as your honor is suggesting, that the proper thing to do would have been to modify the injunction and specify that conduct specifically. But to hold us in contempt for it retroactively, where's where the court erred. And I'd like to go on to a couple of other points because my time is short. What I'd like to cover, even if the court finds that the intent language is itself an independent injunction, the disgorgement remedy ordered with respect to the Russian sales should not stand. And the reason for that is because it's undisputed that the foreign distributor to which Graminex sold owned the right to the same mark, Sernalton, in Russia. It licensed Graminex to use that mark. And it's also, the court found that Graminex had no responsibility for the distributor owning that mark. But doesn't that beg the question, isn't the real question what Graminex was doing, how it was employing those trademark held names in America in order to access a foreign market. Meaning that they had to ship it from America, they created the labels and the forms in America with these Sernal owned trademarks and then shipped them wherever they shipped them. The action of using that, which by my understanding was required in those foreign countries in order to sell that product, was the use of the held trademark was necessary in order for Graminex to make those sales. So why wouldn't that be a violation? Because what you're talking about is an infringement. An infringement takes place in the place of the wrong. Trademark law is territorial. They had a license from their distributor who owned the rights and the marks. The district court in Detroit should not have enjoined the right of the foreign entity to in effect use the mark. And it licensed us to take conduct that was lawful in Russia in the place where the product was to be distributed. But can you do that if you violate the trademark in shipping that product into Russia? Of course you can do anything you want to in Russia with the Russian trademark. The issue here is the trademark use. Which trademark was violated? The trademark in Russia is identical to the Sernalton in English. And the conduct was the end use to which they objected was the use of the Sernalton name in Cyrillic. Only Graminex Pharma owned the Cyrillic mark. So the idea that this was use, that that conduct of packaging and so forth was use of the American mark, is an understandable confusion in the district court. But there's no right to enjoin the use of the Russian mark, which only the Russian distributor had the right to exploit in Russia, and gave a license to my client to use in connection with its sales in Russia. If there are no other questions, and if you finished your answer to that one, I think it's time for your adversary. Thank you, Your Honor. May I proceed? Thank you, Your Honor. May I please the Court? My name is Robert Hayes, and I represent A.B. Sernal in this matter. A.B. Sernal engaged in multiple litigation in multiple jurisdictions, including in Sweden, over a period of several decades for one purpose, one fundamental purpose. That was to get control of its marks, and to stop Graminex from using those marks, from alienating them, from using them in commerce. These were marks that Sernal had developed, and developed certainly brand recognition in, for years. The settlement that was negotiated with the assistance of Judge Lawson was supposed to achieve that result. And Sernal gave up a lot to achieve that result. It agreed to pay a multimillion dollar judgment without further contesting it, and it also gave up its substantial damage claims on claims which the judge had already found that it had a substantial likelihood of success. And if you think about it, at bottom, I refer to the Graminex parties, Ms. May and Graminex. Fundamental position is, is that Sernal didn't achieve that. That this very broad injunction that was issued didn't achieve that result. It's a violation of that injunction when the other side has sent these items to Russia, which has some kind of a trademark over these matters in Russia. So one of the things I would like to highlight is that, this is an example of how the Graminex parties' positions have jumped all over the place in this case. They objected to the admission of the registration statement of Graminex in Russia. So the record really as we stand right now, and that was during Ms. May's testimony, and it's in the Record Exhibit 224. So as the record stands right now, that mark is not even in evidence. We don't know really what the rights are in Russia. But as you said, Your Honor, this case is about what Graminex and Ms. May did in the United States. Well, and that's a factual finding on the part of the District Court, correct? Absolutely, and that factual finding, there certainly is no basis in the record to say it was without any evidence whatsoever. And in fact, if you look at Exhibit 55, you'll see that what Ms. May was doing, what the parties were using was the Latin lettering of CERNLTN. For this case, I didn't know that's what we call English. It's Latin lettering. But in any event, it was CERNLTN as we would see it. It was not in Cyrillic. For example, in the app at pages 210 and 220, you'll see the labels, and it says CERNLTN, it's not in Cyrillic. And they were put on, it's not all, the injunction is not about what were on the boxes that were sold to consumers. Where the labels were placed was on the outside of the packaging that was being sent to Russia, as well as in these shipping invoices, and as well as in the contracts between Graminex and, among others, Graminex Pharma. And so those were the uses. The court also found, am I correct, that the court also found that Ms. May admitted that she was requested by Russia to use that writing on those documents, and that it was necessary to the sale by Graminex in Russia. Absolutely, Your Honor, that's absolutely true. That's a finding of fact by the court. Yes, that is absolutely true. And an admission. It's admitted. In fact, it was both Heather May and Cynthia May. For instance, Ms. May was asked, so you said that there were CERNLTN tablets, you told the Australian government that was CERNLTN tablets, to get them admitted, but they were really not CERNLTN tablets. Answer, that is correct. We were ordered by our customer to enclose, and then he directed us to do that so it could be admitted. So this is not our evidence. This is out of the mouths of the opposing parties who are admitting this. I mean, at least to my mind, incredibly. That was, as Judge Lawson recognized, that was their defense. Their defense was, I'm allowed to violate a federal court injunction because the customers told me that was necessary to do, so we couldn't. The reason the customers would obviously have told them to do that was because the customer recognized the value of the mark that was not entitled to be used by Gramenac. That's exactly right, Your Honor. The CERNLTN had the original market share authorizations in Russia as well as in Thailand and in Australia. So it had to be that product. And, you know, if you want to argue it, what would Russia allow? I mean, I can't say much good about Russia right now, but even Russia probably would say, it's not a lawful use of your mark to put a mark that's known as one product on another product. I mean, that wouldn't be, I don't know Russian law, but you would suggest that that just would not be acceptable there. Well, that's not really pertinent here. No, but it is to the extent that they argue that it is, Your Honor, but that's correct. But, I mean, it doesn't, I can't see how that excuses. I can't see how even if Russia had that requirement, it excuses. It absolutely does not, Your Honor. And that's the point. Assuming this was all legal, I would submit that Gramenac's Russian informant, if it had the rights to those marks, could authorize anybody but the Gramenac's parties to use that mark. And the reason is because a private person, no matter what their legal rights, cannot excuse compliance with a federal court order. The only entity that can do that is either the federal court itself or an appellate court with actual jurisdiction. I would like to jump ahead for a moment. And what I would submit, just on the structure of the argument, even if you want to read, first of all, that second sentence says this injunction. And that was changed when the court entered the preliminary injunction. In the preliminary injunction hearing, we claimed trademark infringement and Judge Lawson found that we would prevail, a substantial likelihood of us prevailing on that. And his order was directed to that. But even if you're going to say that this modifies the first sentence, what the judge was saying is, I'm not using this words, pledge, and alienation within the strict dictionary definition. This has a very broad application. And as you said, Your Honor, they did exactly what the words of that statement said they may not do. If you turn to one of these on the settlement agreement, they admit that they violated it. The whole argument now is that there is no injury. We noted in our opposing brief that was not raised below. But there were no damages. What they argued is that the court lacked jurisdiction to award damages, therefore it lacked subject matter jurisdiction. And Judge Lawson rejected that argument, as he should have. But they didn't argue this idea that we suffered no injury, that harm is not compensable, and of course we did. The whole idea here was that we wanted to market those marks. We wanted worldwide control of those marks. And when someone uses your mark where you have goodwill in it, you have suffered an injury for no other reason than it dilutes your mark. And we cited you in the 8th Circuit case exactly on that point. Graminex parties tried to distinguish it on the grounds that that was a Lanham Act case, but it still recognizes the point that the use of a mark outside of an agreement does create actual injury. When you talk about the latches, moving to that topic, the only thing that was in the record in the district court was that Graminex parties were permitted for an extended period of time to use the marks wrongfully. That comes nowhere close to showing latches. As this court held in McKeon, you must show, first, undue delay, and secondly, prejudice. There was really no attempt in the district court to show those items. Judge Lawson, the district court, actually gave them more credence when he addressed the arguments of this machinery. The reason that that evidence was entered was not on latches. There was a dispute between the experts as to whether the cost of that machinery should be offset against the revenues in creating what their net profits were. That's why it was offered. It was rebuttal testimony. They didn't even argue that as latches. Judge Lawson gave them a lot more credit than they deserved, but still rejected the argument. I would just ask the court to take away one thing from my argument. There is no evidence in this record that Cernel had any knowledge of anything Graminex was doing with those marks until 2017 when its new CEO started looking at these items. All the evidence, even at the district court, all the time periods at the district court sites, are all to actions that were taken before the permanent injunction was issued. So, for instance, the so-called registration, which is not in the record, of Graminex Pharma, that application was filed in 2006. While it was granted in 2008, there was nothing we could do about the fact that all the wrongful conduct to the extent there was, would have occurred in 2006 before the injunction was issued. They point to in 2003 that Graminex Austria was using the products. That's one of the reasons we brought the lawsuit. And you're allowed to assume, as this court held in McKeon, that when an injunction is entered, it's going to be enforced. And... So both the latches and the disgorgement issues are abuse of discretion standards, correct? I believe it is. What about either the latches or the amount of disgorgement or the number of years that are covered, do you think is an abuse of discretion below?  With one exception, is that I do believe... Judge Lawson... We certainly seek to have his judgment affirmed, but one small mistake that he made is that he equated the length of time that the wrongful conduct was outstanding as somehow harmful to Cernel. And maybe just get right to the point of answering your question. Judge Lawson decided as a matter of law that even though he didn't find latches, he had a right to reduce the number of years of our disgorgement of profits. And I would submit that is an error of law. Well, he did that based on the equitable consideration of delay, correct? No, I believe, Your Honor, what he actually said was that it was because since we're not in those markets, he was going to then reduce our reward, cut it in half, the amount of damages cut. Did it have anything to do with delay? The only thing he said was, he said something about it would give us a first incentive to allow them the market so that we could then get greater profits. But what I'm submitting is... Isn't the argument that what the court was looking to do in equitable considerations related to the time frame for disgorgement related to the fact that it was for disgorgement, not based on damages that you had placed in the record of your actual loss. So the court said, I'm going to consider when you brought this, although it did not proclaim that you engaged in latches, that that occurred. But it said, the record that I'm looking at constitutes a request for disgorgement. And in my estimation, the appropriate way to handle that, since it is not based on damages, it's based on injury, is to conclude that half of the six-year statute of limitations is an appropriate award. Why is that an abuse of discretion? Because one is that Cernel's not at fault. If you assume there's no latches, Cernel's not at fault for the amount of time. We have in this record how Graminex had made so many misrepresentations, even before the case was settled as to what it was doing. And where you don't... And so to hold the number of years that had elapsed against Cernel, I would submit, is not appropriate. But how does that relate to the quantum of proof in the record? Because what the court was looking to was the distinction between a record that shows you were damaged in a certain amount versus looking to the amount of inappropriate earnings Graminex partook of, and deciding how much of that inappropriate earning should be returned to you by the equitable remedy of discouragement. I would just submit, Your Honor, that I don't think it's equitable to allow Graminex, given its conduct in this case, that benefit of the doubt, or that equitable consideration. That would be my answer to your question, Your Honor. And I see that I'm at zero, so I will stop, unless you have any other questions, Your Honor. Thank you. So I'd like to address the issue of latches. Because I think the... Though latches is committed to the discretion of the court, it's an equitable issue. There was clear error here in not applying latches. Once an aggrieved party has notice of its claim, it cannot lay in wait for a decade to see if the conduct it objects to becomes profitable and then claim the profit. That's what happened here. The court found, by February of 2008, so this is not conduct before the... as Mr. Hayes represented conduct before the settlement. By February of 2008, nearly two years after the settlement, Cernel had received report from Graminex Pharma that that Graminex Pharma had registered Cernelton in Russia and suspected that Graminex was behind it. Now, the court ultimately determined that Graminex was not behind it. The link was missing. But they suspected. And they did nothing for ten years. So they should have proceeded when they were first aware of conduct you might have committed, but you didn't actually commit. So that would be... that suspicion would be a part of the factual scenario that you would seek to use in attributing... in applying latches? Yes, Your Honor, because that was the claim they brought in the contempt proceeding. The focus of the contempt proceeding was proving that we somehow engineered Graminex Pharma to register the mark. They lost on that point, but it was the basis on which... They didn't bring the claim at the very beginning, even though the claim would have been an invalid claim. That's true of all situations where you're on notice of misconduct. I just... it just seems odd to try to attribute... to characterize as latches a failure to pursue a non-meritorious claim against you. Right. Well, there's other evidence in the record they believed that we were misusing the website. Wasn't that later? Weren't all those evidence... The real key to 2008 is that one notice, right? Well, in subsequent understanding that the marks were being used by other persons and then the record of their delay is very clear. They said we had more important things to pursue. We were having financial difficulties. We were having personal problems. The judge found their delay was completely inappropriate. Right? And then accounted for that in making his equitable determination of the propriety of discouragement, right? But the rule... Where I'm saying he made a clear error of law was on not recognizing that when you delay in a way that allows the damages to increase year after year, you are in effect acquiescing in the harm that you're now seeking the monetary recovery for. That is a recognition... But the court... But the suit against Graminex was only for the six years within the statute of limitations. Right? Not beyond that. Right? Well, actually, I think the suit was beyond the statute of limitations from the time they... It was a six-year period, right? A six-year look back. Yes, Your Honor. And so it was only those six years from that time forward that the court even looked to. Correct? That's correct. But the point is that when you become aware of conduct that you believe... Or an enterprise that you believe infringes your rights, you're not allowed to sit back and wait and see if that enterprise becomes profitable and then go seek the profit. Because earlier, none of the sales that they complain about in Russia... I guess what I'm struggling with is had they acted earlier, the court would have found that they didn't have adequate evidence earlier. Well, they would have investigated in all instances of notice. You're chargeable with notice of what you would have discovered. And what they ultimately claimed to have discovered was this misconduct. So the laches principle works the same way. You're not allowed to stand idly by and watch your claim and damages increase. Is it your position that there should have not been any disgorgement or it was too much? My position is twofold. One, I think you properly apply this rule of equitably that you're not allowed to stand by and effectively gamble on the success of the enterprise you complain about and then reap the reward of that. So I think there should be no damages. Certainly to the extent there are any, I agree that the judge is his decision to limit it to three was subject to an exercise of discretion. But I think the legal error was not recognizing the prejudice that was at issue in they had notice, had they investigated, none of the sales would have been there that they complained about. The relief that they got was a non-restitutionary disgorgement. So it's very clear it's not like a sale to Graminex was a loss to CERNEL because they didn't have the market authorizations in any of these places. They had no plans to be there, no intent to be there. I think, counsel, that may be incorrect because they actually held rights in Russia early on. Early on they were expired at the time, at the period that the judge awarded damages. Because those rights had expired, which of course then calls into question this whole issue of why they had to use the U.S. mark to get through to import because the theory of it is that they were doing this conduct in 2012 and 2016 on a Russian, on their 2002 Russian registration that had expired in 2007. Okay. If there are no other questions, your time is up. We thank you both for your argument and we'll consider the case carefully. Thank you.